Good morning. May it please the court. My name is Peter Wolfe. I represent the petitioner Appelant in this habeas case. Deputy prosecutor. Are you the public defender? That's true, your honor, yes. Well, welcome to the court. Thank you. I think your opponent wants to introduce himself. Deputy Prosecuting Attorney James Anderson for a response. Hello, Mr. Anderson. You may proceed, Mr. Wolfe. The court issued an order asking the parties to be prepared to discuss Castile v. McFadden, and it wasn't obvious from the order whether both parties were the matter for concern or just one. But I'll discuss it briefly. First, although this isn't really germane to the analysis, I will say that I think you were in the right of it in that case, Judge Hawkins. But the McFadden case did not establish any new law in the circuit. What it did restate was that a generalized invocation of a U.S. constitutional claim is not sufficient to fairly present to the state court a specific constitutional claim. And so that's self-exhaustion law. And the purpose of the exhaustion law is that the petitioner give the state court a fair opportunity to act on the federal claim, and thereby remedy the problem if they see that it exists. So what a petitioner must do is describe both the operative facts and the federal legal theory on which his claim is based. That's a quote from Castile v. McFadden. And the court went on to say that citation to either state or federal case law involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion. So in that case, then, this court applied that settled law to a brief arising in a case in Arizona that didn't cite any specific constitutional provision or cite a federal or state case that governed the federal claim. So that case is far different from our case. In our case, the exhaustion doctrine is satisfied for any one of three reasons. The first is that Thompson's state court brief in the Hawaii Supreme Court fairly presented the claim by setting out the operative facts and citing Kennedy, Oregon v. Kennedy, which is the federal case that governs the resolution of this double jeopardy claim. And so actually, the opening brief isn't in the present excerpt's record, but it is in this court's record because it is in the excerpts that were prepared in respect to the respondents' dismissed 2008 appeal. And they had appealed the denial of exhaustion, and this court eventually dismissed the appeal on the ground that it didn't satisfy the collateral order doctrine and told the respondents, you can raise this issue when the merits come up if they do. So in any event, it's in number 816982, the opening brief and their answering brief and the reply brief. Kennedy was cited at page 22 and on pages 37 and 38 of that brief. The operative facts were presented at pages 20 through 22 of the brief. The Kennedy intent standard was quoted. Intent was argued as a reason to grant relief, and this is a quote from that brief. The state's deliberate intent to place inadmissible evidence before the jury in the closing minutes of a 30-day trial obviously constituted prosecutorial misconduct. Let's assume the panel were to conclude that, in fact, your client did exhaust this claim. Yes. What's the problem with the state of Hawaii not applying, I guess if this is the correct description, not applying the lesser standard to a determination of deliberate prosecutorial misconduct in the context of double jeopardy? So first of all, I would quarrel with the term lesser standard. The problem with what this- The same different. Different standard. Okay. So the problem is that they apply a different standard, which means that they apply the wrong standard. So the Hawaii Supreme Court takes the view that their Rogin test is more lenient than the Kennedy test, but it's actually a completely different test. So their further view that if they deny you under Rogin that they necessarily have determined that you couldn't win under Kennedy, they're just wrong about that because they don't focus at all on the intent. So the problem here in this habeas case is that when the state Supreme Court applies the wrong analysis, now they're in the arena where they've acted contrary to clearly established federal law, which means that their analysis is entitled to really not be looked at at all, and this court then needs to review the federal claim de novo. And so we think that based on the facts of this case, if you look at it de novo, it's clear that when the prosecutor did what he did in order to abort the first trial, and then when the state system permitted a second trial, which ended in a hung jury, and then a third trial, which finally resulted in a conviction to take place, that was a violation of the double jeopardy clause. And I don't think that from the facts of the case, you could infer anything other than that the prosecutor intended to either provoke a motion for mistrial, or as this court clarified the Kennedy test in the United States versus Lopez-Avia, where Kennedy bars retrial where the prosecutor aimed to burn the jury. The term burn is used by the Ninth Circuit. So what else could be going on when you have a trial that's not going very well for the prosecutor, and it's going on for 30 days, and now you're in the last rows of it, and you in effect, to use an analogy which has probably been overused, you throw a skunk into the jury box, and then you don't care what happens, because you've either provoked a mistrial motion, and you're hoping that you don't get tagged with the Kennedy analysis, and then you get a do-over, or you've so prejudiced the matter that you've burned the jury. Now, what's your best case for the proposition, if this is your argument, and correct me if I'm wrong, your best case for the proposition that if a state court misapplies its own double jeopardy standard, that we're entitled to review that determination de novo? Well, I guess I would disagree with the premise, because our position is that they failed to apply the Kennedy standard, and they applied their own standard, which looks at the egregious nature of the prosecutorial misconduct, and then decides in context should it bar a retrial. We think that they misapplied that state standard, but so what? That wouldn't bring us here. You sort of move that aside and say this should be decided under Kennedy, and if what happened here meets the Kennedy test, that's enough. That's right. And they never applied the Kennedy test, even though they think they did. I mean, I think it's clear from the state court decisions, Rogin and the one that followed it, Pacheco, they think that if they apply Rogin and deny the defendant relief, that they have not only applied their own, quote, more lenient standard under the Hawaii Constitution, but they've also correctly applied the Kennedy standard. But, in fact, my position is they're just completely wrong about that. I don't get the sense that they think they've applied the Kennedy standard, but rather by not having an intent requirement, they have applied a standard that would not require the same level. It would require no intent by the prosecutor. It just happens. It can still be, whether intended or not, you have this egregious prosecutorial misconduct. Well, that's true. And what they're saying is, well, if you look at Kennedy and you look at the four concurring justices, that requires you to jump even higher, and we're not going to make you do that under the Hawaii Constitution. So the question is, by deciding it as they did, your position, I take it, is that they haven't, in effect, decided what we might call like a lesser included Kennedy, right? You say it's two different standards. It's two different standards. So under the Kennedy standard, if we were to look at that de novo, where is the intent? Well, I would say that you do the same thing that is done in the United States District Courts and this court every day of the week, which is you infer the intent from what the person actually did. There's hundreds, probably thousands, maybe hundreds of thousands of people that are serving prison terms right now where the intent that was inferred by the jury that was necessary to convict them of a crime was inferred from what they did in the context in which they did it. And I don't think that applying the Kennedy standard ought to be any different.  My deliberate intent was to provoke a mistrial because you're never going to get that. And so you do what you always do in intent cases. You look at what the person did, when they did it, how they did it, whether they were – yes, sir. Can I take a second? I think your position is that the Hawaii Supreme Court applying the different standard did not apply the federal standard. That's right. What do we do with Harrington v. Richter, which says that we ought to presume that the state Supreme Court did decide the federal issue and decided correctly? Well, whether it says so or whether it doesn't, if it's implicit in the case and the judgment comes down, we're supposed to presume and give deference to the state court determination. I take that to be that unless there is something in the record which shows that they did not apply the federal standard, we presume that they did. Well, except that their case law makes it clear that they think that the very essence of the federal standard, which is the intent, is irrelevant to the inquiry they make. And that's the inquiry they made in this case. What you're saying is that the Hawaii Supreme Court opinion itself has language which shows that they are not considering the federal standard as we are told to presume they should. Well, I would say that the language in the opinion, which is a single sentence on this issue, is clear that they think they are deciding both issues. That's why they cite Pacheco. Well, therefore, don't we under Harrington v. Richter have to presume that they did apply the federal standard? Well, ordinarily one might, but when you have a clear development of Hawaii law which makes it clear that they view the standard as completely different and that the gist of the federal standard intent is irrelevant, and when the appellant, or Thompson in this case, raises specifically before the Hawaii court, look, the trial judge never allowed me to interrogate the prosecutor to determine his intent or get his predicate questions or what he had prepared for this cross-examination, and that was a problem also, and the Hawaii court gave short shift to that. So I don't think one could say that even though they think they applied the federal standard, it would be wrong to conclude that they actually did it. They just think they did it, and they're wrong because the two standards are so contrary to each other that you can't apply the one and assume or conclude that it's a subset of the other. Well, I guess I better try to. Thank you. Thank you. Thank you. May it please the court. James Anderson for the respondents. Petitioner has not exhausted this claim, a federal claim for this court. He has never cited to a specific provision of the United States Constitution as operative facts and a legal theory. He hasn't labeled his claim as being federal. He hasn't. His only citation to a federal case was to show the contrasting tests. In fact, his desire was only to submit the double jeopardy claim on state grounds. In the point section of his opening brief, which Castillo says we must look at, the four corners of the opening brief on appeal, he specifically pointed out that Kennedy was not the law, and he proceeded to analyze the matter under state law only, and, of course, the Hawaii Supreme Court responded accordingly. So our position is no, he never exhausted his claim, and I'm not sure where the district court got the information that he did. Probably from his petition, Rule 40 petition, in substantive to his conviction, but I'm not sure about that either, because I couldn't find it there. Well, he certainly cites to Kennedy, right? He cites to Kennedy only to show this is the federal standard, but we're not operating under that. We're operating under the egregious misconduct as opposed to the specific intent standard. And I'm pretty sure that Petitioner has procedurally defaulted under here because our Hawaii Rules of Penal Procedure, post-conviction rules, state that under Rule 4083, that once an issue has been ruled and ruled upon, it's waived. So I don't think he can bring it again. It's to me that it depends on the standard. Castillo says he mentions the federal case, and, in fact, the Hawaii court looks at the different standards, so they're apprised that Kennedy may well apply. They decide, well, they think they, as Mr. Wolf said, they think they are applying Kennedy, in effect, by referencing both, but saying, well, we're even going to go lower than Kennedy, so we don't need to go that high. So we're actually, in effect, deciding it, because if it doesn't meet this one, it certainly won't meet that one. It wasn't a question of the Hawaii Supreme Court not knowing that there were two different standards. So it just seems to me that they fairly have in front of them these two potentially complementary but possibly conflicting standards. Why wouldn't that be enough under Castillo? Because I think primarily the petitioner has to alert the Hawaii Supreme Court that it's proceeding under a federal claim, and I don't think it did. I don't think he did here. But your position is that he ruled out the use of Kennedy in his brief. Absolutely. Can you give me a citation to that page, please? That is... No, I can't. It's in his opening brief, which is cited at three points in my footnote. In footnote 1 of my answer, it tells you exactly where his opening brief is, and it's in the points of error section of that brief when he specifically said that Kennedy is not the law in this jurisdiction. So, yes, he ruled it out there. Do we have any cases that say that a mention of a case for the purpose of saying it is not applicable is not a valid mention under Castillo? I don't know. We don't. I'm sorry. Let's just assume you got past the exhaustion. Okay. Would you address the false argument that even though the Hawaii Supreme Court thought it was laying out the standards and saying it's looking at a lesser standard and also doesn't meet the deliberate standard, was somehow faulty? Can you say that again? I'm not really clear. Well, I mean, I think what he's saying is that, well, they didn't really address Kennedy. I think that's what Mr. Wilson is saying. That's true. But, in fact, they do, in at least part of their order, recite that you can't have a new trial unless there's a deliberate conduct. Egregious. True. Egregious, which is, you know, essentially more akin to the Kennedy standard, correct? The Kennedy standard's a little bit different, I think. It's a specific intent standard. And I can assume that the egregious misconduct standard would encompass that standard. Well, one of the things they did say, what do we do with this statement? He says, retrial's barred where the mistrial motion is necessitated by deliberate misconduct. So that, to me, sounded like... An intent? Intent. Oh, I don't know. I'm asking you. But then they sort of say that with one hand, and then on the other hand they say, whoops, we just... I understand. It is confusing. What do we do with that? I don't know. It is confusing in Rogin, the way they describe how the standards are different and one is greater and gives more protection, and I'm not sure about that. I think, though, that Mr. Wolf is saying that under the Kennedy standard, the result would have been different. I don't think so. Because I think in Kennedy, in a theft case, the prosecutor examined an expert witness on the issue of value and asked him whether he didn't do business with the defendant because he was a crook. And in this case, sex assault, the prosecutor, after going sequentially through all the items found in Thompson's car, which were all admitted into evidence, finally came to the tape listings and said, why is there so much pubic hair in your car, Mr. Thompson? I think both are... That's the prosecutor asking a witness an improper question. And I think under either standard, it wouldn't warrant the double jeopardy bar to retrial. So I don't think Mr. Wolf is correct there. Does that answer your question at all? Sure. So when you really get down to whether it can be characterized as deliberate, this reference to the pubic hair, which he wasn't supposed to mention, he basically says, I thought the jury could figure that out. That's what his opinion was, right? Any person who swept the bathroom floor could tell it was pubic hair. I don't think that went over well with the trial court. Who, in the abundance of caution, declared a mistrial? But that was for unfair prosecutorial misconduct, but not egregious or intending to provoke a mistrial, prosecutorial misconduct, which would evoke the double jeopardy bar. Thank you. Okay, thank you. Well, there was a little more to this outrageous pubic hair question than counsel has said, because not shortly before that, the Hawaii Supreme Court had had before it a case litigated by the Honolulu Prosecutor's Office whether you can characterize hair without expert testimony. And the Hawaii court said, you can't do that without going through the kind of daubert analysis that comes from the Supreme Court's case. So in that context, throwing this out there at the end of the case, when lawyers ask questions, they do it deliberately. That's what they're training as a trial lawyer. They plan this stuff out, and they do it. And in this context of this case, how it was going, I don't think there could be any conclusion other than it was designed to provoke a mistrial motion or to burn the jury. And I think that that is clear from the context. And as I stated before, plenty of people have been convicted beyond a reasonable doubt, based on inferences of what their intent was, based on what they did. And it may be, you know, one of those things that lawyers, judges don't like to do, which is call each other out on when they commit misconduct and tell them, hey, you did this on purpose. How else did it happen? And there's consequences of that. You know, this happened 16 years ago, and Thompson has been trying to get something, some relief for it. And I think it's high time that that took place now. So I'd be prepared to respond to the question about where in the opening brief Kennedy and the federal standard were mentioned, if the court has further questions about that. Thank you. Thank you very much. Thank both of you. Pardon me, I've got a page number. Yes, Your Honor. It takes place on page 22 of the opening brief, which is page 230, I think, of the excerpt. But anyway, it's page 22 of the opening brief, and it comes again. The federal standard is referenced and intent is referenced on pages 38 and 38 of the opening brief. Of the opening brief. Yes, Your Honor. Thank you for the reference. Thank you both for your arguments. Thank you. The case just argued, Thompson v. Thomas is submitted and we're adjourned for the morning.
judges: Hawkins, McKeown, Bea